IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

Michael A. Williamson, #163705, )
          ) Civil Action No. 6:07-3665-JFA-WMC
     Petitioner, )
          ) **REPORT OF MAGISTRATE JUDGE**
  vs.      )
          )
Leroy Cartledge, Warden of )
McCormick Correctional Institution, )
          )
     Respondent. )
_____)

    The petitioner, a state prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2254.

    Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review posttrial petitions for relief and submit findings and recommendations to the District Court.

## BACKGROUND OF THE CASE

    The record reveals that the petitioner is currently confined in the McCormick Correctional Institution of the South Carolina Department of Corrections (SCDC), as the result of his Greenville County conviction for armed robbery and his sentence of life imprisonment. The Greenville County Grand Jury indicted the petitioner at the January 1998 term of court for armed robbery (98-GS-23-266). Attorney Beattie Ashmore represented him on this charge. On February 9-10, 1998, he received a jury trial before the Honorable Paul E. Short, Jr. The jury found the petitioner guilty as charged, and Judge Short sentenced him to life imprisonment.

The petitioner timely served and filed a notice of appeal. Assistant Appellate Defender Aileen P. Clare represented him on appeal. On March 16, 1999, the petitioner filed his Final Brief of Appellant, in which he presented the following issue for review:

> Did the trial court err in holding that the State need not serve notice when seeking a life sentence under S.C. Code Ann. § 17-25-45(A)?

The State filed a Final Brief of Respondent on March 10, 1999. Senior Assistant Attorney General Harold M. Coombs, Jr., represented the State on appeal. On February 24, 2000, the South Carolina Court of Appeals affirmed the petitioner's conviction and sentence in an unpublished opinion. *State v. Williamson,* 00-UP-127 (S.C. Ct. App., Feb. 24, 2000). The South Carolina Court of Appeals sent the remittitur to the Greenville County Clerk of Court on March 14, 2000.

The petitioner filed a *pro se* post-conviction relief (PCR) application (01-CP-23-1309) on February 26, 2001. He alleged the following grounds for relief in his application (verbatim):

> (1)    Applicant was denied his Sixth and Fourteenth Amendment rights to effective assistance of counsel by the existence of an actual conflict on the part of his trial counsel which denied the Applicant the undivided loyalty and assistance of his attorney.

> (2)    Applicant was denied his Sixth and Fourteenth Amendment rights to effective assistance of counsel by the failure of his trial counsel to provide representation within the requisite range of competent assistance and this failure resulted in substantial prejudice to the Applicant.

> (3)    Applicant was denied his Sixth and Fourteenth Amendment rights to effective assistance of counsel when his appointed Appellate counsel refused his request to appeal the admissibility at trial of Applicant's statement, thereby denying the Applicant of effective assistance of counsel which resulted in the Applicant's conviction being "Affirmed".

2

He thereafter filed an amendment, wherein he raised the following additional allegations (verbatim):

> (1)     Violates the Separation of Powers Doctrine, and undermines the ideals associated with "fair administration of justice"; Violates the Principles Fundamental to "Due Process and Equal Protection" USCA Const. Amend. XIV. Violates the *Ex Post Facto* Safeguards in a collateral manner subject to review under "due process" parameters; S.C. Const. Art. I, §14; USCA Const. Art. I, §9. Violates the Ex Post Facto Safeguards in a collateral manner subject to review under "due process" parameters; S.C. Const. Art. I, §14; USCA Const. Art. I, §9. Violates and Moots Protections Against "Cruel & Unusual Punishment"; S.C. Const. Art. I, §15; USCA Const. Amend. VIII, XIV.

> (2)     1989 Guilty Plea was entered into involuntarily, and unintelligently, thereby, constituting a "Breach of Plea" by the State Government of South Carolina. Violating the Applicant's Fourteenth Amendment guarantee to Due Process and Equal Protection Under the Law. U.S. Const. Amend. XIV.

> (3)     Did the Court err in accepting a guilty verdict from the jury when the state failed to adduce sufficient evidence to prove beyond a reasonable doubt that Applicant was guilty of armed robbery in violation of his rights guaranteed him through the Fourteenth Amendment to the United States Constitution and *Jackson v. Virginia*?

> (4)     Did the Court err by allowing the prosecutor to argue before the jury that the Applicant was "a liar" in closing argument before his jury an the judge failed to give a curative instruction to disregard this argument in direct violation of his rights guaranteed im through the Fourteenth Amendment to the United States Constitution?

> (5)     Was the Confession made by the Applicant obtained by psychological and induced ploys in violation of the Applicant's Sixth Amendment right against self-incrimination protected and guaranteed through the United States Constitution?

> (6)     Was Applicant's prior conviction of Assault and Battery with Intent to Kill in 1989 used to enhance his conviction under §17-25-45 A violation of *Ex Post Facto* Laws of South Carolina Constitution Article I, §4 and Article I, §9 of the United States Constitution?

3

(a)     Counsel failed to call to the stand to suppress crucial evidence against the Applicant his "statement" the wife of Investigator Paul Silvaggio to support the Applicant's claim that Investigator Silvaggio made contact illegally through his wife.

(b)     Counsel failed to call to the witness stand State Witness Teresa Ann Vaughn's sister to verify that he was talking to family members and it was made known to him that Teresa was doing bad and in bad shape because of her incarceration.

(c)     Counsel questioned both Paul Silvaggio and State Witness Teresa Ann Vaughn concerning these facts. However, counsel failed to call the necessary witnesses to the hearing for rebuttal of their testimony nor to bolster and support his clients claims so the statement which was crucial evidence could be suppressed.

(d)     Counsel failed to subpoena or call the Applicant's supporting witness to his allegation that he was concerned about Teresa Ann Vaughn's well-being. State Witnesses "SISTER".

(e)     Counsel failed to subpoena or call the Applicant's supporting witness Silvaggio's wife to support the allegation that she is the one that informed the Applicant to call Silvaggio and these two witnesses could have supported or showed cause for statement made by Applicant to be suppressed.

(f)     Counsel failed to call the actual robbery victim or to have her brought to trial as law required after she had been subpoenaed to testify who robbed her or if the person had red hair like the Applicant to support his innocence and a Motion for a Directed Verdict of Acquittal.

(g)     Counsel failed to object to Teresa Ann Vaughn's testimony during the jury trial of Applicant or the *Jackson v. Denno* Hearing when she stated for the record that she had suffered from a nervous breakdown which is a mental breakdown and ask that her testimony be stricken and place a Motion for a New Hearing after newly discovered facts pertaining to her testimony were given in open court.

4

(h)     Counsel failed to subpoena the Greenville Detention Center's own phone records of phone call made by the Applicant when all phone calls were recorded in the month of February in 1997.

(I)     Counsel failed to object to the witnesses that gave testimony that was strickly hearsay and repeatedly requested witnesses to give hearsay testimony on the stand against his own client.

(j)     Counsel failed to object to the Solicitor's statement that the Applicant was a liar and took the deliberations away from the jury concerning this fact when it was up to the jury to determine this fact and failed to request the Judge give instructions on this fact or to request the Solicitor's statement made to inflame the jurors against the Applicant be stricken because nothing was introduced during the trial of the Applicant to lay a proper foundation for the statement made by the State Solicitor.

(7)     Was the Applicant denied his right to appeal his conviction because of ineffectiveness of Appellate Counsel?

(8)     Was the Applicant denied his Sixth Amendment right under the United States Constitution to effective assistance of his trial counsel?

(9)     Was the evidence and statement obtained illegally in violation of the Applicant's Fourth, Fifth, and Fourteenth Amendment rights guaranteed by the United States Constitution?

(10)     Did Ashmore deny the Applicant his undivided loyalty when counsel represented the Applicant and his law firm partner represented the Applicant's "Common Law Wife", States Witness "Teresa Ann Vaughn"?

The State filed its return on October 24, 2002.

The Honorable Edward W. Miller held an evidentiary hearing into the matter on August 27, 2004, at the Greenville County Courthouse. The petitioner was present at the hearing and represented by attorney J. Faulkner Wilkes. Assistant Attorney General Karen Ratigan represented the State. The petitioner testified on his own behalf. Also, he

5

presented Joseph Heilman, Mary Bishop, Officer Paul Silvaggio and trial counsel, Mr. Ashmore.  The State did not present any witnesses.

On September 27, 2004, Judge Miller filed an order of dismissal, in which he denied relief and dismissed the application with prejudice.  The order of dismissal addressed the petitioner's claims that trial counsel labored under a conflict of interest, as well as his allegations that counsel rendered ineffective assistance because he failed to (1) adequately investigate and challenge the petitioner's confession; (2) adequately investigate the petitioner's involvement in a previous robbery at a Bi-Lo store; and (3) failed to call his sister, Mary Bishop (Teresa Vaughn's sister), and Investigator Silvaggio's wife as witnesses at trial.  Finally, the order addressed th petitioner's claim that appellate counsel was ineffective for failing to argue the denial of the motion to suppress.[1]

A timely notice of appeal was served and filed.  Mr. Wilkes continued to represent the petitioner in collateral appellate proceedings.  On January 27, 2006, the petitioner filed a petition for writ of certiorari.  The petitioner raised the following issues in the petition (verbatim):

> (1)     Did Trial Counsel Render Ineffective Assistance by Failing to Timely Disclose and Explain Counsel's Conflict of Interest in the Representation of Petitioner?
>
> (2)     Was Trial Counsel Ineffective assistance for Failing to Adequately Investigate Facts and Present a Challenge to [the] Voluntariness of [the] Confession?
>
> (3)     Was Appellate Counsel Ineffective for Failing to Argue the Denial of Petitioner's Motion to Suppress?

---

[1]Judge Miller found that the petitioner's claim that a prior conviction was improperly used to enhance his sentence was barred in PCR because it could have been raised at trial and on direct appeal.

The State filed a return to petition for writ of certiorari on May 3, 2006.  The South Carolina Court of Appeals filed an order denying certiorari on September 19, 2007.  It sent the remittitur to the Greenville County Clerk of Court on October 5, 2007.

In his petition now before this court, the petitioner raises the following allegations (verbatim):

> **GROUND ONE:**  Whether trial counsel render ineffective assistance by failing to disclose timely and explain conflict of interest.
> **SUPPORTING FACTS:** "See supporting Memorandum of Law"
>
> **GROUND TWO**:  Was trial counsel ineffective for failure to adequately investigate facts and present a challenge to Voluntariness of Confession
> **SUPPORTING FACTS**: "See supporting Memorandum of Law"
>
> **GROUND THREE**:  Was Appellate Counsel ineffective for failing to argue the denial of Petitioner's Motion to Suppress.
> **SUPPORTING FACTS**: "See supporting Memorandum of Law"

On January 22, 2008, the respondent filed a motion for summary judgment. By order filed January 23, 2008, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion.  The petitioner filed his response to the motion and his own motion for summary judgment on February 28, 2008.

## APPLICABLE LAW

Title 28, United States Code, Section 2254(d) and (e) provides in pertinent part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

7

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex*

8

*Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

## ANALYSIS

### *Ground One*

In his first ground for relief, the petitioner claims that trial counsel labored under a conflict of interest. This allegation was presented to and rejected by the PCR judge (App. II. 73-75). The petitioner thereafter presented this allegation to the state court of appeals as Issue 1 on certiorari.

A convenience store was robbed on December 17, 1996, by two men, one with a pistol and the other with a knife. On February 5, 1997, the petitioner gave a statement to police that he and another man robbed the convenience store. He claimed the other man had a pistol, but he did not have a weapon (App. 171-73). The petitioner was convicted in February 1998 of armed robbery.

9

The petitioner testified at the PCR hearing that his girlfriend, Teresa Vaughn, made several payments to attorney William Yarborough to represent him on the instant charge (App. 376). The petitioner stated that Ms. Vaughn was charged as an accessory in one of the armed robbery charges pending against him - not the armed robbery at issue here (App. 377). The petitioner met with Mr. Yarborough twice before the bond hearing. His subsequent *pro se* motion to relieve Mr. Yarborough was granted (App. 377-78). The petitioner testified that he knew approximately one month before his trial that his trial counsel, Mr. Ashmore, and Mr. Yarborough were law partners (App. 378). Mr. Ashmore confirmed that Mr. Yarborough, his former law partner, represented the petitioner at a bond hearing and that the petitioner had filed a *pro se* motion to relieve counsel based upon an alleged conflict of interest (App. 363). Documents in the file indicated that Ms. Vaughn paid Mr. Yarborough $200.00 or less for representing the petitioner at the bond reduction hearing (App. 364, 373). Mr. Ashmore, who was on the indigent defense contract in 1997, was appointed to represent the petitioner after Mr. Yarborough was relieved (App. 364-35). Mr. Ashmore testified that the petitioner knew about his professional relationship with Mr. Yarborough (App. 365). He knew that Vaughn was a prosecution witness and that she was the petitioner's "common law wife." He also testified that he would have raised the issue of a conflict of interest in this case if he believed a legitimate conflict existed (App. 371-72).

In denying relief, the PCR judge concluded that the petitioner did not meet his burden of proving there was a conflict of interest. He implicitly found that the petitioner had waived any conflict of interest. He expressly found that the petitioner knew trial counsel and Mr. Yarborough were partners. He further found that the petitioner "was clearly on notice by the time of trial of the relationship between Mr. Yarborough and Counsel, and [he] could have moved for Counsel to be relieved at th[at] time if he perceived a conflict of interest. This Court further finds the Applicant obviously understood the concept of a conflict of

10

interest, as the Applicant moved to have Mr. Yarborough relieved on these grounds" (App. II 73-75).

The Sixth Amendment guarantees an accused the right to effective assistance of counsel, see *Strickland v. Washington*, 466 U.S. 668, 686 (1984), and an essential aspect of this right is a lawyer "unhindered by conflicts of interest." *Mickens v. Taylor*, 240 F.3d 348, 355 (4th Cir.2001) (en banc), aff'd, 535 U.S. 162 (2002); *see also Cuyler v. Sullivan*, 446 U.S. 335, 345-50 (1980). The mere fact of joint representation does not *per se* establish the denial of effective assistance of counsel. *Glasser v. United States*, 315 U.S. 60 (1942). The substance of a conflict of interest claim is analyzed by determining whether there was "an actual conflict of interest [that] adversely affected his attorney's performance." *Jackson v. State,* 495 S.E.2d 768, 773 (S.C. 1998); *Mickens*, 535 U.S. at 166, 171-74. *See also Cuyler*, 446 U.S. at 348. This standard is different than the standard applied to a claim for ineffective assistance of counsel. In order to show ineffective assistance of counsel, a claimant generally must demonstrate that his lawyer afforded him defective representation and that there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. However, when counsel is burdened by an actual conflict of interest, he "breaches the duty of loyalty, perhaps the most basic of counsel's duties." *Id.* at 692. In this situation, a defendant need not show prejudice due to the inherent seriousness of the breach and the difficulty in "measur[ing] the precise effect on the defense of representation corrupted by conflicting interests." *Id.* Rather, "[p]rejudice is presumed ... if the defendant demonstrates that counsel 'actively represented conflicting interests' and that an 'actual conflict of interest adversely affected his lawyer's performance.'" *Id.* at 692 (quoting *Cuyler*, 446 U.S. at 348) (internal quotations omitted).

To obtain relief under this theory, a defendant must demonstrate both (1) an actual conflict of interest - possible or potential conflicts will not satisfy this requirement -

11

*and* (2) that the conflict significantly affected counsel's performance. *Mickens*, 240 F.3d at 355 (discussing three part test for establishing whether an actual conflict of interest caused and adverse effect).  If a defendant establishes both of these two elements, prejudice is presumed.  If however, a defendant fails to establish either of these two elements, then the conflict of interest claim necessarily fails.  *See Mickens*, 535 U.S. at 170-75; *Rubin v. Gee*, 292 F.3d 396, 401 (4th Cir. 2002); *Beaver v. Thompson,* 93 F.3d 1186, 1192 (4th Cir. 1996) ("To prevail on a claim of conflict of interest, [the petitioner] must present convincing evidence of an actual conflict and a resulting adverse effect on performance.") (citing *Sumner v. Mata*, 449 U.S. 539, 550 (1981)).  An adverse effect cannot be presumed solely from the existence of a conflict of interest.  *See Mickens*, 535 U.S. at 170-75; *Rubin*, 292 F.3d at 401.

A criminal defendant may waive this right by choosing to proceed to trial with an attorney who has an adverse conflict of interest, so long as the waiver is voluntary, knowing, and intelligent.  *See Johnson v. Zerbst*, 304 U.S. 458, 464 (1938) (an effective waiver of a constitutional right requires that a waiver must be an "intentional relinquishment or abandonment of a known right").

> A determination that defendants have waived the right to conflict-free counsel disposes of the need to evaluate the actual or potential ineffectiveness of counsel caused by the alleged conflicts of interest. The determination of whether there has been an intelligent waiver of right to counsel must depend, in each case, upon the particular facts and circumstances surrounding the case, including the background, experience, and conduct of the accused . . . . A defendant's waiver must be established by clear, unequivocal, and unambiguous language. The record should show, in some way, that the defendant was aware of the conflict of interest; realized the conflict could affect the defense; and knew of the right to obtain other counsel.

*United States v. Rodriguez*, 982 F.2d 474, 477 (11th Cir.1993) (quotations and citations omitted).

12

Assuming the petitioner did not waive any conflict, the petitioner failed to establish "an actual conflict of interest [that] adversely affected his attorney's performance." *Jackson*, 304 U.S. at 464; *Mickens*, 535 U.S. at 166, 171-74. Although the petitioner's "common law wife," who was also his co-defendant in another case, paid Mr. Yarborough for representing *the petitioner* at a bond hearing and Mr. Yarborough was relieved on the petitioner's motion, nothing in the record suggests, much less proves, that Mr. Yarborough ever represented the co-defendant or that he had divided loyalties merely because she made the payments instead of the petitioner. That this did not constitute an actual conflict is supported by a contrast of the present case to the factual scenario presented to the Supreme Court in *Wood v. Georgia*, 450 U.S. 261 (1981). As the Court subsequently explained in *Mickens*:

> [I]n *Wood* [. . .], three indigent defendants convicted of distributing obscene materials had their probation revoked for failure to make the requisite $500 monthly payments on their $5,000 fines. We granted certiorari to consider whether this violated the Equal Protection Clause, but during the course of our consideration certain disturbing circumstances came to our attention: At the probation-revocation hearing (as at all times since their arrest) the defendants had been represented by the lawyer for their employer (the owner of the business that purveyed the obscenity), and their employer paid the attorney's fees. The employer had promised his employees he would pay their fines, and had generally kept that promise but had not done so in these defendants' case. This record suggested that the employer's interest in establishing a favorable equal-protection precedent (reducing the fines he would have to pay for his indigent employees in the future) diverged from the defendants' interest in obtaining leniency or paying lesser fines to avoid imprisonment. Moreover, the possibility that counsel was actively representing the conflicting interests of employer and defendants "was sufficiently apparent at the time of the revocation hearing to impose upon the court a duty to inquire further." *Id*. at 272, 101 S.Ct. 1097. Because "[o]n the record before us, we [could not] be sure whether counsel was influenced in his basic strategic decisions by the interests of the employer who hired him," *ibid*., we remanded for the trial court "to determine whether the conflict of interest that this record strongly suggests actually existed," *id*. at 273, 101 S.Ct. 1097.

13

*Mickens*, 535 U.S. at 169-70.

Moreover, although the petitioner testified at the PCR hearing that he thought Mr. Yarborough had the best interests of Vaughn at heart because of an undisclosed relationship between Mr. Yarborough and her family, he does not set forth in his petition, and he failed in PCR to identify, a plausible alternative defense strategy or tactic that his defense counsel might have pursued, or that the alternative strategy or tactic was objectively reasonable under the facts of the case known to the attorney at the time of the attorney's tactical decision.  Finally, the petitioner did not establish that defense counsel's failure to pursue that strategy or tactic was linked to the actual conflict.  *Mickens,* 240 F.3d at 361.  Thus, the claim lacks merit.

### Ground Two

In ground two, the petitioner alleges that trial counsel was ineffective for failing to adequately investigate the facts surrounding his statement and failing to present a challenge to the voluntariness thereof.  This allegation was presented to and rejected by the PCR judge (App. II 75-76).  The petitioner thereafter presented this allegation to the state court of appeals as Issue 2 on certiorari.  This court finds that the state courts' rejection of the petitioner's claim was not "contrary to" and did not involve an "unreasonable application of" clearly established United States Supreme Court precedent.

The petitioner testified at the PCR hearing that his confession was involuntary (App. 398).  He claimed that, although he asked to speak to a lawyer, Investigator Paul Silvaggio badgered him in an interview room for over an hour (App. 391-92).  Also, Silvaggio's wife (a detention center employee) allegedly told the petitioner to contact Silvaggio for "help" (App. 396-97).  The petitioner later learned that Teresa Vaughn's brother had died and that she was upset (App. 381).  The petitioner testified that, after he called Silvaggio to set up a meeting with Vaughn, Silvaggio picked them up the next day

14

(App. 394-95).  The petitioner and Vaughn spoke for 20 minutes.  Also, Silvaggio told him that Vaughn would not be released on bond to attend her brother's funeral unless he confessed (App. 393, 395).  The petitioner testified that he decided to confess because he was worried about Vaughn (App. 394-95).

Investigator Silvaggio confirmed that the petitioner asked to speak to a lawyer at their first meeting.  Therefore, he immediately ceased all questioning (App. 343). Silvaggio testified that he did not discuss this or any other case with his wife while she was employed at the detention center (App. 345-46).  Silvaggio testified that Vaughn called him from the detention center and said that she had provided a false alibi for the petitioner, who was involved in the armed robbery (App. 352-53).  Silvaggio did not know that Vaughn's brother had died until after she had given a new statement (App. 353).  Silvaggio testified that the petitioner later called him and asked to meet with Vaughn (App. 354-55, 357, 359). Silvaggio admitted that he assisted Vaughn in obtaining bond after the petitioner signed a confession (App. 353).  However, he testified that he did not make a deal with Vaughn to have her coerce a confession from the petitioner in exchange for getting bond (App. 360-61).

Claims of ineffective assistance of counsel are governed by the two-part test established in *Strickland v. Washington*, 466 U.S. 668 (1984).  First, the petitioner "must show that counsel's performance was deficient."  *Id.* at 687.  To prove deficiency, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness."  *Id.* at 688.  Second, the petitioner must show that the deficient performance actually prejudiced him, *i.e.* "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.  Finally, the Court in *Strickland* held that "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies," and "[i]f it is easier to dispose of an

15

ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.* at 697.  Review of counsel's performance is "highly deferential." *Id.* at 689.

The United States Supreme Court in *Culombe v. Connecticut*, 367 U.S. 568 (1961), set forth the general test of voluntariness to be applied to the waiver of *Miranda* rights and any issue concerning the voluntariness of confessions generally:

> The ultimate test remains that which has been the only clearly established test in Anglo-American courts for 200 hundred years: the test of voluntariness. Is the confession the product of an essentially free and unconstrained choice by its maker? If it is, if he has willed to confess, it may be used against him. If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process.

*Id.* at 602.

A two-fold determination of voluntariness must take place.  First, the trial judge must determine, from the context of an *in camera* hearing, whether or not appropriate *Miranda* warnings were given and freely and voluntarily waived.  At the *in camera* hearing, it is the State's burden to establish by a preponderance of the evidence that the confession or statement was freely and voluntarily given and that *Miranda* warnings were waived. *State v. Washington*, 370 S.E.2d 611, 612 (S.C. 1988).  Once the trial judge makes a finding that the statement has been made freely and voluntarily, the matter must then be submitted to the jury.  The State bears the burden of establishing the voluntariness of the confession beyond a reasonable doubt before the jury. *Id.*

In determining the voluntariness of the *Miranda* waiver and subsequent confession, the trial judge at the *in camera* hearing is not limited to any particular fact or set of facts.  The trial judge's determination of this issue requires a careful review of the totality of the circumstances surrounding the waiver and subsequent confession. *State v. Doby*, 258 S.E.2d 896, 899 (S.C. 1979).  In making this determination, various factors can and

16

should be considered.  It is absolutely clear that no promises, threats, or inducements, however slight, may be made by law enforcement authorities in an effort to obtain a confession.  However, even if a statement is improperly induced, the statement is not necessarily deemed involuntary unless the inducement is so connected with the statement "as to be a consequence of it."  *State v. Rochester*, 391 S.E.2d 244, 246-47 (S.C. 1990); *State v. Peake*, 352 S.E.2d 487, 488 (S.C. 1987).

In denying relief, the PCR judge observed that the trial judge had found that the petitioner's statement had been made voluntarily after conducting a *Jackson v. Denno*, 378 U.S. 368 (1964), hearing.  The PCR judge concluded that petitioner had not met his burden of proving ineffective assistance of trial counsel on this issue (App. II 76).

As argued by the respondent, when these principles are applied to the present case, it is clear that the petitioner's argument lacks merit.  The PCR judge did not unreasonably find that there was not any credible evidence that trial counsel was ineffective regarding the petitioner's confession.  Investigator Silvaggio testified that Vaughn contacted him about recanting her original statement and giving a second statement implicating the petitioner in the armed robbery.  Silvaggio did not know of Vaughn's brother's death until after she gave her revised statement.  Silvaggio testified that the petitioner called him to set up the meeting with Vaughn and that he did not have a deal with Vaughn to get her bond in exchange for her coercing the petitioner into signing a confession.

The PCR judge found that Silvaggio's testimony was more credible than the petitioner's testimony (App. II 76).  *See Ivey v. Ozmint*, No. 07-cv-4024-GRA-BM, 2008 WL 1787481, **20-21 (D.S.C. 2008) (noting that a PCR court's findings on credibility are entitled to substantial deference on habeas corpus review under Section 2254(e)).  Notably, the trial judge held a full *Jackson v. Denno*, 378 U.S. 368 (1964), hearing prior to the petitioner's jury trial, in accordance with state court practice.  The petitioner, Silvaggio, and Vaughn all testified *in camera* about the exact series of events leading up to and surrounding the

17

petitioner's confession (App.14-89).   The trial judge concluded that the petitioner's confession was freely and voluntarily made and that his rights under *Arizona v. Roberson*, 486 U.S. 675 (1988) (holding that the Fifth Amendment right to counsel is not offense-specific and that once an accused invokes the right to counsel for interrogation regarding one offense, he may not be approached regarding any offense unless counsel is present), and *Edwards v. Arizona*, 451 U.S. 477 (1981) (If the accused invokes the right to counsel, interrogation must cease and police may not conduct interrogation unless the accused initiates communication, exchanges, or conversations with the police) had not been violated.  The trial judge specifically found that the petitioner "intiate[d] the second contact with the detective and was advised by him once again, was fully [M]irandized] by him of all of his Constitutional rights, including his right to counsel."  However, the petitioner "at that time did freely and voluntarily waive the same" (App. 89-92).

As argued by the respondent, the petitioner failed to prove that counsel's representation was deficient under *Strickland* - *i.e.*, that trial counsel failed to render reasonably effective assistance under prevailing professional norms.  The petitioner has failed to present a cogent argument to advance his claim that trial counsel should have better investigated the circumstances surrounding his confession.  This is especially true in light of the fact that trial counsel thoroughly litigated this issue in a pre-trial *Jackson v. Denno* hearing.  Similarly, the petitioner also failed to show  that he was prejudiced by trial counsel's performance.  Therefore, this allegation has no merit.

The PCR judge also addressed the petitioner's allegation that his trial counsel rendered ineffective assistance because he failed to call the petitioner's sister and Investigator Silvaggio's wife as witnesses at trial.  The PCR judge found:

> Applicant did not present testimony from either the Applicant's sister or Investigator Silvaggio's wife. As such, any discussion regarding what these individuals would have testified about at trial is purely speculative. *See Bannister v. State*, 333 S.C. 298,

18

> 303, 509 S.E.2d 807, 809 (1998) (the South Carolina Supreme
> Court 'has repeatedly held a PCR applicant must produce the
> testimony of a favorable witness or otherwise offer the
> testimony in accordance with the rules of evidence at the PCR
> hearing in order to establish prejudice from the witness' failure
> to testify at trial.') (emphasis in original).

(App. II 78). *See also, e.g., Bassette v. Thompson*, 915 F.2d 932, 940-41 (4th Cir. 1990)

(petitioner's allegation that attorney did ineffective investigation does not support relief

absent proffer of the supposed witness's favorable testimony). As to the petitioner's claim

that Mr. Ashmore rendered ineffective assistance of counsel by failing to call Mrs. Bishop,

who is Teresa Vaughn's sister, as a witness, the PCR judge noted that her testimony at the

PCR hearing revealed that her testimony at trial would not have aided in the petitioner's

defense. Accordingly, the PCR judge found that the petitioner failed to meet his burden of

proving that trial counsel's performance was not deficient (App. II 78). This court finds that

the state court reasonably applied *Strickland*. Accordingly, the claim fails.


### Ground Three

The petitioner's remaining contention is that appellate counsel was "ineffective

for failing to argue the denial of Petitioner's Motion to Suppress." This allegation was

presented to and rejected by the PCR judge (App. II 78-79). The petitioner thereafter

presented this allegation to the state court of appeals as Issue III on certiorari. The

respondent submits that the state courts' rejection of the petitioner's claim was not "contrary

to" and did not involve an "unreasonable application of" clearly established United States

Supreme Court precedent.

The petitioner testified at the PCR hearing that he specifically asked appellate

counsel to address the issue of the denial of the motion to suppress his confession on

appeal, but that counsel told him that she did not think she could prevail on that particular

issue (App. 403). The petitioner introduced a letter he had written to appellate counsel and

19

the letter he had received from counsel in reply to his letter (App. 404-05; App. II 38-39). Appellate counsel's letter to the petitioner explained that "[w]hether or not a statement may be presented to the jury is an evidentiary ruling."  Counsel's letter to the petitioner further explained the difficulty in prevailing on appeal when challenging evidentiary rulings.  "To overturn a ruling on evidence, you have to show that the court abused its discretion." Although counsel agreed that the statement should not have been admitted, she indicated that she did not believe that she could successfully argue that there had been an abuse of discretion.  Moreover, counsel explained her belief that the issue she raised "is strong," and she explained why she believed this (App. II 39).

In denying the petitioner's application for post-conviction relief, the PCR judge found that the petitioner had failed to meet his burden of proving ineffective assistance of appellate counsel (App. II 78-80).  A defendant is constitutionally entitled to the effective assistance of appellate counsel.  *Evitts v. Lucey*, 469 U.S. 387, 396-97 (1985).  A PCR applicant has the burden of proving appellate counsel's performance was deficient. *Anderson v. State*, 581 S.E.2d 834, 835 (S.C. 2003).  Appellate counsel is not required to raise every non-frivolous issue that is presented by the record, *Tisdale v. State*, 594 S.E.2d 166, 167 (S.C. 2004), as "[t]here can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review."  *Jones v. Barnes*, 463 U.S. 745, 752 (1983).  Rather, appellate counsel has a professional duty to choose among potential issues according to their merit.  *Id.*

To obtain relief a PCR applicant must show that appellate counsel's performance was (1) deficient; and (2) prejudice from the appellate counsel's deficiency. *Southerland v. State*, 524 S.E.2d 833, 836 (S.C. 1999).  In other words, the applicant is required to demonstrate "that his counsel was objectively unreasonable in failing" to identify and argue significant and obvious issues on appeal and "a reasonable probability that, but for his counsel's unreasonable failure ..., he would have prevailed on his appeal."  *Smith v.*

20

*Robbins*, 528 U.S. 259, 285 (2000) (citation omitted); *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986) (when a claim of ineffective assistance of counsel is based upon failure to raise viable issues, the court must examine the record to determine "whether appellate counsel failed to present significant and obvious issues on appeal"). Indeed, "'[w]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751 (1983)). Although recognizing that "[n]otwithstanding *Barnes*, it is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim" on direct appeal, the Supreme Court has recently reiterated that "it [will be] difficult to demonstrate that counsel was incompetent." *Robbins*, 528 U.S. at 288. "'Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.'" *Id.* (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)*). See also Bell v. Jarvis*, 236 F.3d 149, 164 (4th Cir.2000) (en banc).

In this case, appellate counsel's performance was not deficient. Although the petitioner did ask appellate counsel to brief the issue of the denial of the motion to suppress, appellate counsel was not obligated to set aside her professional legal judgment to comply with his wishes. Rather, appellate counsel "must be allowed to exercise his reasonable professional judgment." *Tucker v. Catoe*, 552 S.E.2d 712, 715 (S.C. 2001) (citing *Jones v. Barnes*, 463 U.S. 745 (1983) and *Thrift v. State*, 397 S.E.2d 523 (1990)). In her letter to the petitioner, appellate counsel clearly indicated that she had reviewed his entire case and determined she was most likely to prevail on the issue of notice for sentencing under South Carolina Code Annotated § 17-25-45(A) and that she did not believe that there was a likelihood of success in challenging the denial of the motion to suppress. Appellate counsel also correctly advised the petitioner of the difficulty of successfully arguing the trial judge erred in denying the motion to suppress the petitioner's

21

confession (App. II 39).  *See*, *e.g.*, *State v. Creech*, 441 S.E.2d 635, 639 (S.C. Ct. App. 1994) ("The trial judge's resolution of the issue of voluntariness of a statement will not be disturbed on appeal absent an error of law.").  Based upon the foregoing, this claim lacks merit.

### **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, it is recommended that the respondent's motion for summary judgment (doc. 10) be granted, and the petitioner's motion for summary judgment (doc. 14) be denied.

s/William M. Catoe
United States Magistrate Judge

July 8, 2008

Greenville, South Carolina

22